SCRIBNER v. CITY OF GRAND RAPIDS.

MUNICIPAL CORPORATIONS—SIDEWALKS—TAXES.

> Complainant, a lot owner, being notified by the city marshal to rebuild the sidewalk in front of his premises, made a contract for the construction of a tar walk, but, before work was commenced, was informed by the marshal that the city attorney would not permit such a walk to be constructed, an ordinance being then pending in the common council to extend the stone-walk district to include complainant's premises. Complainant thereupon visited the city engineer's office, and obtained, as was claimed, the permission of the assistant to proceed with the work according to the contract. Accordingly, a foundation was laid, which, however, was as well adapted to a stone as to a tar walk. On the same day, the ordinance was passed by the council, and complainant was notified that a stone walk would be insisted upon. *Held*, that the city was justified, upon complainant's refusing to construct a walk to comply with the ordinance, in building the same itself, and assessing the cost against the premises.

Appeal from superior court of Grand Rapids; Burlingame, J. Submitted October 7, 1898. Decided January 3, 1899.

Bill by Charles H. Scribner and another against the city of Grand Rapids and others to set aside a sidewalk assessment. From a decree for complainants, defendants appeal. Reversed.

*McGarry & Belden*, for complainants.

*Henry J. Felker* (*H. Joslin*, of counsel), for defendants.

HOOKER, J. The complainants are owners of business property in Grand Rapids, in front of which the city caused a stone sidewalk to be constructed, and the cost was assessed upon the property. After confirmation by

the council against the protest of the complainants, this
bill was filed to restrain the sale and set aside the assess-
ment.   The superior court set aside the assessment, and
enjoined proceedings to enforce its payment, but, as a
condition precedent to such relief, required the complain-
ants to pay to the city treasurer the sum of $85.   The de-
fendants have appealed.

The evidence shows that prior to May 22, 1897, there
was a plank walk in front of these and adjoining premises.
By reason of the grading of an alley, a step of about two
feet was left at the south end of the complainants' walk.
This was regarded as dangerous by the city marshal, who
on May 22, 1897, caused a notice to be served upon the
complainants, requiring them to "rebuild the walk in
accordance with the lines established by the city engineer,
under directions of the board of public works, within 20
days after service" of such notice.   The notice contained
blank specifications reading as follows:

" The sidewalk shall be —— feet in width, of artificial
stone, cut-stone flagging, asphalt, or tar concrete, upon a
foundation of stone, gravel, or concrete of —— inches in
depth, with top dressing of tar concrete of —— inches in
thickness.   Such walk shall be laid with either a crown-
ing center one and one-half (1½) inches higher than edges
of walk, or with a pitch of one-quarter (¼) inch to the foot
from inside of the walk towards the street."

The complainants thereafter proceeded to lower the
wooden walk to the proper grade, and, while taking down
the area wall to the grade, were informed that lowering
of the walk would not do,—that a new walk was required;
whereupon, on June 4th, they let a contract for a new tar
walk, after having some talk with the marshal and one of
the aldermen, from whom the complainants claim to have
received the information that a tar walk would be suffi-
cient.   This contract required the complainants to provide
a proper foundation for the tar walk, and they proceeded
to tear up the plank sidewalk to that end; and on the 5th
of June the sidewalk contractor drew one load of gravel

upon the premises, for the walk, for which he never claimed compensation. On June 7th the marshal notified the complainants that the city attorney required them to quit work, and would serve an injunction if they did not. They did so, and called at the city engineer's office. Here they met the assistant city engineer and an alderman, and it is claimed that they told them to go ahead with the construction of their walk; so they got their men together, and proceeded to prepare the foundation, also the area, for the tar walk. At its regular session held on the evening of that day, the common council passed an ordinance which was then pending, whereby the stone-walk district was extended, and made to include these premises, and at the same meeting a resolution was adopted requiring the complainants to build a stone walk, and directing the city attorney to see that they did so, and on the morning of the 8th a copy of this resolution, with a notice, was served upon the complainants by the marshal. They called upon the city attorney, and, at his suggestion, upon the board of public works, and we judge from the statement in the brief of complainants' counsel that they were given to understand that a stone walk would be insisted on, and the testimony clearly shows the same. It is claimed that at this time the complainants had completed a foundation for a tar walk for about two-thirds of the required distance, and that it would have done equally well for a stone walk. No more work was done until June 16th, when a new notice was served, requiring the sidewalk to be rebuilt in accordance with a resolution adopted June 14th, which directed the marshal to notify the owners of the property to rebuild the walk in accordance with the ordinance. Complainants then offered to rebuild with tar, but were forbidden, and nothing more was done until the city caused the walk to be built, and assessed the cost upon the premises.

It is highly improbable that these complainants were not conversant with the reasons for asking them to defer the reconstruction of their walk, and did not know of the

pendency of the ordinance to extend the stone-walk district. According to the testimony of the complainants, they did no work upon this walk that could not have been utilized for the stone walk, and we see no good reason why they did not proceed and build the stone walk. They seem to have rested upon the assumption that because they had been notified by the marshal to rebuild their walk before their premises were included in the stone-walk district, and had made a contract for the construction of a tar walk, they thereby acquired a vested right to go on and construct a tar walk, regardless of the fact that it would not conform to the ordinance that was passed a few days later. The power is confided to the council to regulate the streets, and determine the grade, dimensions, and character of sidewalks. It was much more consistent with fairness for the council to stop the building of a tar walk, that it knew would not conform to a pending ordinance, than to allow it to be constructed, and, after a short interval, require it to be rebuilt of stone; and a corresponding spirit of fairness should have led the complainants to make alterations in their foundations, if any were necessary, and build the stone walk, instead of standing upon their supposed technical right to impose upon the community the burden of building its walk, or accept a tar walk, which should for years be an unsightly blemish upon the street, and perhaps a source of danger to pedestrians and loss to the city. We think that they had acquired no legal right to do this, and the case is devoid of any equities that entitle them to consideration.

The decree is reversed, and the bill dismissed, with costs of both courts.

The other Justices concurred.